FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 12, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DONALD H., | No. 2:17-cv-00393-MKD |
|               Plaintiff, | |
| | REPORT AND |
| vs. | RECOMMENDATION TO DENY |
| | PLAINTIFF'S MOTION FOR |
| | SUMMARY JUDGMENT AND |
| COMMISSIONER OF SOCIAL | GRANT DEFENDANT'S MOTION |
| SECURITY, | FOR SUMMARY JUDGMENT |
|               Defendant. | |
| | ECF Nos. 17, 18 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 17, 18. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, IT IS RECOMMENDED Plaintiff's Motion, ECF No. 17, be denied and Defendant's Motion, ECF No. 18, be granted.

REPORT AND RECOMMENDATION - 1

1

## JURISDICTION

2      The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

3  1383(c)(3).

4

## STANDARD OF REVIEW

5      A district court's review of a final decision of the Commissioner of Social

6  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

7  limited; the Commissioner's decision will be disturbed "only if it is not supported

8  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

9  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

10  reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

11  (quotation and citation omitted).  Stated differently, substantial evidence equates to

12  "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

13  citation omitted).  In determining whether the standard has been satisfied, a

14  reviewing court must consider the entire record as a whole rather than searching

15  for supporting evidence in isolation.  *Id.*

16      In reviewing a denial of benefits, a district court may not substitute its

17  judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

18  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

19  rational interpretation, [the court] must uphold the ALJ's findings if they are

20  supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

REPORT AND RECOMMENDATION - 2

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

REPORT AND RECOMMENDATION - 3

1  considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

2  416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

3  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

4  404.1520(b); 416.920(b).

5      If the claimant is not engaged in substantial gainful activity, the analysis

6  proceeds to step two.  At this step, the Commissioner considers the severity of the

7  claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

8  claimant suffers from "any impairment or combination of impairments which

9  significantly limits [his or her] physical or mental ability to do basic work

10  activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

11  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

12  however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

13  §§ 404.1520(c); 416.920(c).

14      At step three, the Commissioner compares the claimant's impairment to

15  severe impairments recognized by the Commissioner to be so severe as to preclude

16  a person from engaging in substantial gainful activity.  20 C.F.R. §§

17  404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

18  severe than one of the enumerated impairments, the Commissioner must find the

19  claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

20

REPORT AND RECOMMENDATION - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

REPORT AND RECOMMENDATION - 5

1  Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

2  404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other

3  work, analysis concludes with a finding that the claimant is disabled and is

4  therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

5      The claimant bears the burden of proof at steps one through four above.

6  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

7  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

8  capable of performing other work; and (2) such work "exists in significant

9  numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2);

10  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

11                          **ALJ'S FINDINGS**

12      On April 24, 2014, Plaintiff filed applications for Title II disability insurance

13  benefits and for Title XVI supplemental security income benefits, alleging an

14  amended onset date of August 31, 2009. Tr. 42, 163-78. The applications were

15  denied initially, Tr. 99-105, and on reconsideration, Tr. 111-17. Plaintiff appeared

16  at a hearing before an administrative law judge (ALJ) on May 3, 2016. Tr. 39-66.

17  On May 23, 2016, the ALJ denied Plaintiff's claim. Tr. 16-31.

18      At step one, the ALJ found Plaintiff had not engaged in substantial gainful

19  activity since August 31, 2009. Tr. 21. At step two, the ALJ found Plaintiff had

20  the following medically determinable impairments: status post C6-7 discectomy,

1  interbody fusion, and anterior instrumentation; multi-level degenerative changes of

2  the cervical spine; mild thoracic scoliosis; mild facet degenerative change of the

3  lumbar spine; mild calcific tendinosis of the left shoulder; hip complaint;

4  hypertension; and repair of scrotum laceration. *Id.* However, the ALJ then found

5  that Plaintiff did not have an impairment or combination of impairments that

6  significantly limited (or were expected to significantly limit) the ability to perform

7  basic work-related activities for 12 consecutive months, so Plaintiff's impairments

8  were not severe. Tr. 22. The ALJ therefore concluded that Plaintiff was not under

9  a disability, as defined in the Social Security Act, from August 31, 2009 through

10 May 23, 2016, the date of the ALJ's decision. Tr. 27.

11        On September 29, 2017, the Appeals Council denied review, Tr. 1-7, making

12 the ALJ's decision the Commissioner's final decision for purposes of judicial

13 review. *See* 42 U.S.C. § 1383(c)(3).

14                                    **ISSUES**

15        Plaintiff seeks judicial review of the Commissioner's final decision denying

16 him disability income benefits under Title II and supplemental security income

17 benefits under Title XVI of the Social Security Act. ECF No. 17. Plaintiff raises

18 the following issues for this Court's review:

19        1. Whether the ALJ properly evaluated Plaintiff's impairments at step two;

20        2. Whether the ALJ properly weighed Plaintiff's symptom complaints;

REPORT AND RECOMMENDATION - 7

3.  Whether the ALJ properly weighed the medical opinion evidence; and

4.  Whether Plaintiff is disabled under the medical-vocational guidelines.

ECF No. 17 at 7.

**DISCUSSION**

**A. Step Two**

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c); 416.920(c).  To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1508; 416.908 (1991).[1]

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to

---

[1] As of March 27, 2017, 20 C.F.R. § 416.908 was removed and reserved and 20 C.F.R. § 416.921 was revised.  The Court applies the version that was in effect at the time of the ALJ's decision.

REPORT AND RECOMMENDATION - 8

work….." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(a), 416.921(a) (1985);[2] SSR 85-28.[3]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe

---

[2] As of March 27, 2017, 20 C.F.R. §§ 416.921 and 416.922 were amended. The Court applies the version that was in effect at the time of the ALJ's decision.

[3] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

REPORT AND RECOMMENDATION - 9

1  impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687

2  (9th Cir. 2005).

3  Here, the ALJ found Plaintiff had the following medically determinable

4  impairments: status post C6-7 discectomy, interbody fusion, and anterior

5  instrumentation; multi-level degenerative changes of the cervical spine; mild

6  thoracic scoliosis; mild facet degenerative change of the lumbar spine; mild

7  calcific tendinosis of the left shoulder; hip complaint; hypertension; and repair of

8  scrotum laceration.  Tr. 21.  However, the ALJ found that the record did not

9  establish that these impairments significantly limited Plaintiff's ability to perform

10 basic-work activities for 12 consecutive months.  Tr. 22.

11 First, the ALJ noted that the record contained no medical evidence from

12 April 2005 to July 2014, despite Plaintiff's amended alleged onset date of August

13 31, 2009.  Tr. 24.  Next, the ALJ found that the medical evidence documenting

14 Plaintiff's impairments did not establish that Plaintiff's impairments caused more

15 than a minimal limitation on Plaintiff's ability to perform basic work-related tasks.

16 Tr. 24-25; *see* Tr. 306-07 (July 24, 2014 physical examination showed normal

17 range of motion, negative straight leg raise, normal motor strength, normal

18 reflexes, and normal sensation); Tr. 313 (September 16, 2014 treatment note

19 indicated Plaintiff's high blood pressure was controlled with medication); Tr. 319

20 (August 20, 2014 spinal x-ray revealed only moderate C5-6 disc degeneration and

REPORT AND RECOMMENDATION - 10

moderate right C5-6 and C6-7 bony foraminal narrowing); Tr. 320 (August 20,

2014 spinal x-ray imaging was "negative"); Tr. 341 (March 23, 2015 examination

showed normal lumbar range of motion); Tr. 334 (June 17, 2015 imaging of

shoulders showed only mild calcific tendinopathy in left shoulder); Tr. 322-34

(July 16, 2015 examination showed full range of motion and strength, no local

mechanical shoulder pathology, and imaging showed only mild calcific

tendinopathy); Tr. 357-58 (November 11, 2015 imaging showed moderate disc

bulge, mold foraminal stenosis, and mild degenerative changes); Tr. 362 (January

12, 2016 examination showed full strength in extremities, normal reflexes, normal

sensation, and normal coordination; treating provider did not recommend surgical

intervention based on November 2015 imaging).  Additionally, the ALJ considered

and gave great weight to the medical opinions of Dr. Weir, Dr. Staley, Dr. Arnold,

and Dr. Hansen, all of whom opined that Plaintiff's impairments were not severe.

Tr. 25-27; *see* Tr. 48, 71-72, 86, 307.  The ALJ reasonably concluded that this

evidence showed Plaintiff's impairments caused no more than a minimal limitation

on Plaintiff's ability to perform basic work-related tasks.  Tr. 24-25.

Plaintiff offers evidence that Plaintiff argues shows Plaintiff's impairments

are severe.  ECF No. 17 at 8.  Specifically, Plaintiff cites to a November 2014

MRI, a November 2015 MRI, and Plaintiff's own symptom complaints as evidence

of severe impairments.  However, in March 2015, Dr. Barnes characterized

REPORT AND RECOMMENDATION - 11

1    Plaintiff's 2014 MRI as "unremarkable."  Tr. 338.  Dr. Shah did found that

2    Plaintiff's 2015 MRI did not show "anything that would be acutely requiring

3    surgery."  Tr. 362.  Plaintiff makes no argument how these records undermine the

4    ALJ's conclusion that the impairments were not severe.  ECF No. 17 at 7-8.  And,

5    as discussed *infra*, the ALJ properly discredited Plaintiff's subjective symptom

6    complaints, thus, the ALJ was not required to credit those complaints in assessing

7    the severity of the impairments.  The Court may not reverse the ALJ's decision

8    based on Plaintiff's disagreement with the ALJ's interpretation of the record.  *See*

9    *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  The evidence Plaintiff

10   offers does not undermine the substantial evidence supporting the ALJ's

11   conclusion.

12      **B. Plaintiff's Symptom Claims**

13          Plaintiff faults the ALJ for failing to rely on reasons that were clear and

14   convincing in discrediting his symptom claims.  ECF No. 17 at 8-9.  An ALJ

15   engages in a two-step analysis when evaluating a claimant's subjective symptoms.[4]

16   _____

17   [4] At the time of the ALJ's decision in May 2016, the regulation that governed the

18   evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p

19   effective March 24, 2016.  SSR 16-3p; Titles II and XVI: Evaluation of Symptoms

20   in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016).  The ALJ's

REPORT AND RECOMMENDATION - 12

20 C.F.R. §§ 404.1529(a), 416.929(a) (2011); SSR 16-3p, 2016 WL 1119029, at

*2.  "First, the ALJ must determine whether there is objective medical evidence of

an underlying impairment which could reasonably be expected to produce the pain

or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks

omitted).  "The claimant is not required to show that [his] impairment could

reasonably be expected to cause the severity of the symptom [he] has alleged; [he]

need only show that it could reasonably have caused some degree of the

symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted).  "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

---

decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded

effective June 14, 2018 in favor of SSR 16-3p.  Neither party argued any error in

this regard.

REPORT AND RECOMMENDATION - 13

Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony.")). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of an individual's symptoms include: (1) daily activities; (2) the location,

duration, frequency, and intensity of pain or other symptoms; (3) factors that

precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; (5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; (6) any measures other than

treatment an individual uses or has used to relieve pain or other symptoms; and (7)

any other factors concerning an individual's functional limitations and restrictions

due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R.

§§ 404.1529(c) (1)-(3), 416.929 (c) (1)-(3) (2011). The ALJ is instructed to

"consider all of the evidence in an individual's record," "to determine how

symptoms limit ability to perform work-related activities." *Id*. at *2.

REPORT AND RECOMMENDATION - 14

1    Here, the ALJ found Plaintiff's medically determinable impairments could

2    reasonably be expected to produce some of the alleged symptoms, but that that

3    Plaintiff's statements regarding the intensity, persistence, and limiting effects of

4    his symptoms were not consistent with the medical evidence and other evidence in

5    the record.  Tr. 23.  Plaintiff fails to challenge the substance of the ALJ's findings,

6    instead arguing only that the ALJ cannot rely on a lack of supporting evidence

7    alone in evaluating a claimant's symptom complaints.  ECF No. 17 at 8-9.  The

8    Court may decline to address on the merits issues that are not argued with

9    specificity.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2

10   (9th Cir. 2008).  However, the Court conducted an independent review of the

11   ALJ's decision and finds the ALJ's opinion is supported by substantial evidence in

12   the record.

13       *1.  Inconsistent with Medical Evidence*

14   The ALJ found Plaintiff's symptom complaints were inconsistent with the

15   medical evidence in the record.  Tr. 23-25.  An ALJ may not discredit a claimant's

16   symptom testimony and deny benefits solely because the degree of the symptoms

17   alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

18   F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

19   1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical

20   evidence is a relevant factor in determining the severity of a claimant's pain and its

REPORT AND RECOMMENDATION - 15

1    disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2);

2    416.929(c)(2) (2011).  Minimal objective evidence is a factor which may be relied

3    upon in discrediting a claimant's testimony, although it may not be the only factor.

4    *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

5        Plaintiff testified that he experiences substantial neck pain, back pain,

6    shoulder pain, leg pain, weakness and numbness in his arms, that he could not lift

7    more than 15 pounds, that he could walk up to one quarter of a mile, that he could

8    stand for 15-20 minutes at a time, sit for 20-30 minutes at a time, and could not

9    bend over.  Tr. 59-63.  However, the ALJ observed that the physical examinations

10   in the record showed normal physical functioning and the objective imaging

11   revealed mild to moderate abnormalities at most.  Tr. 23-25; *see* Tr. 306-07 (July

12   24, 2014 physical examination showed normal range of motion, negative straight

13   leg raise, normal motor strength, normal reflexes, and normal sensation); Tr. 319

14   (August 20, 2014 spinal x-ray revealed only moderate C5-6 disc degeneration and

15   moderate right C5-6 and C6-7 bony foraminal narrowing); Tr. 320 (August 20,

16   2014 spinal x-ray imaging was "negative"); Tr. 341 (March 23, 2015 examination

17   showed normal lumbar range of motion); Tr. 334 (June 17, 2015 imaging of

18   shoulders showed only mild calcific tendinopathy in left shoulder); Tr. 322-34

19   (July 16, 2015 examination showed full range of motion and strength, no local

20   mechanical shoulder pathology, and imaging showed only mild calcific

REPORT AND RECOMMENDATION - 16

tendinopathy); Tr. 357-58 (November 11, 2015 imaging showed moderate disc

bulge, mold foraminal stenosis, and mild degenerative changes); Tr. 362 (January

12, 2016 examination showed full strength in extremities, normal reflexes, normal

sensation, and normal coordination; treating provider did not recommend surgical

intervention based on November 2015 imaging).  The ALJ reasonably concluded

that this evidence did not support the level of impairment Plaintiff alleged.  This

finding is supported by substantial evidence.

### 2. *Ability to Work with Impairments*

The ALJ found Plaintiff's allegations were inconsistent with his past ability

to work with his impairments.  Tr. 24.  Working with an impairment supports a

conclusion that the impairment is not disabling.  *See Drouin v. Sullivan*, 966 F.2d

1255, 1258 (9th Cir. 1992); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d

1219, 1227 (9th Cir. 2009) (seeking work despite impairment supports inference

that impairment is not disabling).  The ALJ noted that Plaintiff reported that his

impairments resulted from an injury that occurred in approximately 1997.  Tr. 24;

*see* Tr. 53 (Plaintiff testified that he stopped working after his worker's

compensation injury); Tr. 260 (date of injury was August 25, 1997); Tr. 310

(Plaintiff reported in August 2014 that his back "[has] been bothering him for at

least 15 years").  However, the ALJ also observed that Plaintiff was able to work

following this injury.  Tr. 24; *see* Tr. 188 (reflecting earnings in 2000 and 2003-

2009); Tr. 190 (Plaintiff reported working as a painter from January 2006 to January 2007 and from January 2008 to August 2009).  The ALJ reasonably concluded that Plaintiff's ability to work with impairments from his 1997 injury indicated that Plaintiff's impairments were not as severe as he alleged.  Tr. 24.  This finding is supported by substantial evidence.

### 3.  Daily Activities

The ALJ found Plaintiff's daily activities were inconsistent with the level of impairment he alleged.  Tr. 24-25.  A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.").  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).  Here, the ALJ noted that Plaintiff testified that he

experienced significant leg, hip, and back pain, that he could not lift more than 15

pounds, that he could walk up to one quarter of a mile, that he could stand for 15-

20 minutes at a time, that he could sit for 20-30 minutes at a time, and that he

could not bend over.  Tr. 23; *see* Tr. 58-62.  However, the ALJ noted that these

complaints were inconsistent with Plaintiff's frequent bicycle riding.  Tr. 25; *see*

Tr. 55 (Plaintiff testified that he tries to ride his bicycle 100 miles per week); Tr.

306 (Plaintiff reported biking 45 minutes to the July 2014 consultative

examination); Tr. 331 (Plaintiff reported seeing orthopedist in approximately April

2015 following a bicycle accident); Tr. 338 (Plaintiff reported an improvement in

his pain when riding his bicycle).  The ALJ also observed that Plaintiff endorsed

being able to engage in most but not all recreational activities due to neck pain.  Tr.

24; *see* Tr. 346.  The ALJ reasonably concluded that Plaintiff's activities were

inconsistent with the level of impairment he alleged.  Tr. 24-25.  This finding is

supported by substantial evidence.

 **C. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinion of A. Peter

Weir, M.D., and Jeffrey Hansen, M.D.[5]  ECF No. 17 at 9.

_____

[5] Plaintiff's reply brief also raises arguments about medical opinion evidence from

Kevin Cardwell, PA-C, which was submitted for the first time to the Appeals

1    There are three types of physicians: "(1) those who treat the claimant

2 (treating physicians); (2) those who examine but do not treat the claimant

3 (examining physicians); and (3) those who neither examine nor treat the claimant

4 [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

5 *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

6 Generally, a treating physician's opinion carries more weight than an examining

7 physician's, and an examining physician's opinion carries more weight than a

8 reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

9 to opinions that are explained than to those that are not, and to the opinions of

10 specialists concerning matters relating to their specialty over that of

11 nonspecialists."  *Id.* (citations omitted).

12    _____

13 Council and was not considered by the ALJ.  ECF No. 19 at 5; *see* Tr. 2.  Plaintiff

14 failed to raise any challenge regarding Mr. Cardwell's opinion in Plaintiff's

15 opening brief, so challenge to this evidence is waived.  *Kim v. Kang*, 154 F.3d 996,

16 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically

17 and distinctly argued" in the party's opening brief).  Despite Plaintiff's waiver, the

18 Court conducted an independent review of the ALJ's decision and finds the ALJ's

19 decision remains supported by substantial evidence in the record despite the newly

20 submitted evidence.

REPORT AND RECOMMENDATION - 20

1    If a treating or examining physician's opinion is uncontradicted, the ALJ

2    may reject it only by offering "clear and convincing reasons that are supported by

3    substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

4    "However, the ALJ need not accept the opinion of any physician, including a

5    treating physician, if that opinion is brief, conclusory and inadequately supported

6    by clinical findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and

7    brackets omitted).  "If a treating or examining doctor's opinion is contradicted by

8    another doctor's opinion, an ALJ may only reject it by providing specific and

9    legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at

10    1216 (citing *Lester,* 81 F.3d at 830-831).

11    Dr. Weir examined Plaintiff on July 24, 2014, and opined Plaintiff had no

12    functional limitations. Tr. 304-07. Dr. Hansen reviewed the record and testified at

13    the hearing that Plaintiff's impairments were not severe. Tr. 48. The ALJ gave

14    these opinions great weight. Tr. 25, 27. Although an ALJ must provide specific

15    and legitimate reasons to reject contradicted medical opinion evidence, the same

16    standard does not apply when the ALJ credits opinion evidence. *See Orteza v.*

17    *Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bayliss*, 427 F.3d at 1216.

18    Plaintiff asserts that the ALJ should have given less weight to Dr. Weir's

19    opinion due to Dr. Weir's inability to review certain evidence in the record, and

20    that the ALJ should have given Dr. Hansen's opinion less weight because it was

based in part on Dr. Weir's report.  ECF No. 17 at 9.  Plaintiff's argument invites

this court to re-weigh the medical opinion evidence.  The Court "may neither

reweigh the evidence nor substitute its judgment for that of the Commissioner."

*Blacktongue v. Berryhill*, 229 F. Supp. 3d 1216, 1218 (W.D. Wash. 2017) (citing

*Thomas*, 278 F.3d at 954).  The ALJ concluded that Dr. Weir's opinion was

entitled to great weight because it was based on a physical examination of Plaintiff

and was consistent with the medical evidence, and that Dr. Hansen's opinion was

entitled to great weight because it was consistent with the medical evidence and

other medical opinions in the record.  Tr. 25, 27; *see* Tr. 319 (August 20, 2014

spinal x-ray revealed only moderate C5-6 disc degeneration and moderate right

C5-6 and C6-7 bony foraminal narrowing); Tr. 320 (August 20, 2014 spinal x-ray

imaging was "negative"); Tr. 341 (March 23, 2015 examination showed normal

lumbar range of motion); Tr. 334 (June 17, 2015 imaging of shoulders showed

only mild calcific tendinopathy in left shoulder); Tr. 322-34 (July 16, 2015

examination showed full range of motion and strength, no local mechanical

shoulder pathology, and imaging showed only mild calcific tendinopathy); Tr. 357-

58 (November 11, 2015 imaging showed moderate disc bulge, mold foraminal

stenosis, and mild degenerative changes); Tr. 362 (January 12, 2016 examination

showed full strength in extremities, normal reflexes, normal sensation, and normal

coordination; treating provider did not recommend surgical intervention based on

1    November 2015 imaging). The ALJ's evaluation of Dr. Weir's and Dr. Hansen's

2    opinions is supported by substantial evidence.

3        **D. Medical-Vocational Guidelines**

4            Plaintiff urges this Court to find Plaintiff disabled under the medical-

5    vocational guidelines. ECF No. 17 at 9. Plaintiff's argument fails for several

6    reasons. First, Plaintiff's argument is based on the assumption that the ALJ erred

7    in considering the medical opinion evidence and Plaintiff's symptom complaints.

8    As discussed *supra*, the ALJ's evaluation of this evidence is free from legal error

9    and is supported by substantial evidence.

10           Second, Plaintiff's argument asks this Court to make a finding that is beyond

11   this Court's scope of review. The reviewing court's role is to review the

12   Commissioner's decision for a lack of substantial evidence or for legal error. *Hill*,

13   698 F.3d at 1158. The reviewing court is not a finder of fact. *Fair*, 885 F.2d at

14   604. Here, the ALJ's sequential evaluation analysis ended at step two when the

15   ALJ found Plaintiff's impairments were not severe. Tr. 27. Plaintiff's argument

16   assumes that Plaintiff should be limited to light or sedentary work. ECF No. 17 at

17   9. However, because the ALJ's analysis ended at step two, the ALJ did not

18   formulate an RFC or make a finding as to Plaintiff's ability to perform past

19   relevant work or other work in the economy. Accordingly, there is no RFC

20   formulation or step four or five findings for this Court to review. The Court cannot

REPORT AND RECOMMENDATION - 23

make findings of fact regarding Plaintiff's RFC or his status under the medical-vocational guidelines. *Fair*, 885 F.2d at 604. Plaintiff is not entitled to relief on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 17, be DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 18, be GRANTED.

3. The Court enter JUDGMENT in favor of Defendant.

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection. Attention is directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

REPORT AND RECOMMENDATION - 24

1    A district judge will make a *de novo* determination of those portions to

2  which objection is made and may accept, reject or modify the magistrate judge's

3  determination.  The judge need not conduct a new hearing or hear arguments and

4  may consider the magistrate judge's record and make an independent

5  determination thereon.  The judge may, but is not required to, accept or consider

6  additional evidence, or may recommit the matter to the magistrate judge with

7  instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C.

8  § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 2, Local Rules for the Eastern

9  District of Washington.

10    A magistrate judge's recommendation cannot be appealed to a court of

11  appeals; only the district judge's order or judgment can be appealed.

12    The District Court Executive is directed to enter this Report and

13  Recommendation, forward a copy to counsel, and **SET A CASE**

14  **MANAGEMENT DEADLINE ACCORDINGLY.**

15    DATED October 12, 2018.

16    *s/Mary K. Dimke*
       MARY K. DIMKE

17    UNITED STATES MAGISTRATE JUDGE

18

19

20

-

REPORT AND RECOMMENDATION - 25